Cheshire,
No. 4455.

FRANK J. DAVIS *v.* FRED NEES.

Argued February 7, 1956.
Decided March 29, 1956.

*Homer S. Bradley* and *Edward J. O'Brien* (*Mr. O'Brien* orally), for the plaintiff.

*Bell & Bell* (*Mr. Ernest L. Bell, III* orally), for the defendant.

BLANDIN, J. The record including the pleadings and pre-trial order makes it plain that the basic issue before us is whether there was an enforceable contract between the parties. It appears conclusively from the testimony of both that agreements for hire were made, pursuant to which the plaintiff, while working for the defendant, was actually paid $50 per week for the first year and $40 weekly for the two succeeding years. However, he claims his agreed wages were to be $60 per week for all three years, and that the understanding of the parties was that he was to "put back" into the business the balance due him of $10 weekly for the first year and $20 weekly for the next two years. This he says he did and at the end of the third year, his health failing, he left the employ of the defendant without objection by the latter so far as appears.

Taking the evidence most favorable to the plaintiff (*Shimkus* v. *Caesar,* 95 N. H. 286, 287) and accepting or rejecting such portions as they saw fit (*Clover &c Co.* v. *Smith Co.,* 96 N. H. 491, 493), the jury could find the following. At the meeting of the parties where the first agreement was made, the plaintiff told the defendant that he had an offer of $60 weekly at another greenhouse and felt he should receive this amount if he worked for the defendant. Thereupon, Nees agreed to this "on the condition that I would put ten dollars a week back into the business . . . . " This sum, totaling $520, was "deducted from my wages" for "about a year" and then "I suddenly began to get $40 a week." Upon taking this up with the defendant, the plaintiff was told "that the place was not making any money and unless I took less out of it he couldn't afford to put more in it, and if I would take $20 a week less than the original amount a week that I was offered that that much more would be credited to me." The plaintiff having no capital or business of his own, acceded to this arrangement and $20 weekly or a total of $2,080 was accordingly "deducted from my wages" for the next two years and allowed to "accumulate." It appears the jury were warranted in finding that the agreement was that the plaintiff's wages for the entire period of three years were to be $60 weekly and there was a credit of $2,600 due him for the amount he had "put back" into the business.

The jury could believe that the agreement as to what the plaintiff's interest was to be was as he said "only what I was putting in." It is not to be presumed that his money was to remain with the defendant indefinitely or that the plaintiff "should work for pay less than [his] services were worth or on the chance that [his] claim might never mature." *McDonald* v. *Company*, 91 N. H. 411, 412. The contract is not to be construed so as to produce such an unfair or unreasonable result. *Id.*, 412, and cases cited; Restatement, Contracts, *s.* 326(a) and (b). Here, as in the *McDonald* case, the agreement "in its essence related to the plaintiff's employment. It provided an incident thereof, and employment ceasing, reason for the further operation of the agreement ceased." *McDonald* v. *Company, supra*, 412. The jury could find that more probably than not, the agreed amounts of the plaintiff's wages were to be withheld only while employment lasted. It having ceased and the plaintiff having made a demand by bringing this suit, the award was proper.

The defendant excepted to the denial of his motion for a mistrial because the Court in its preliminary statement to the jury said that "Now this is what Mr. Davis alleges; what he claims here. Apparently things didn't go as well as they hoped, because the thing is now in litigation. That is the claim made by Mr. Davis. To this the defendant has entered a general denial . . . . " By denial of the motion, the Court has found that the defendant suffered no prejudice and that the trial was fair. *State* v. *Ellard*, 95 N. H. 217, 223. The Court merely stated the plaintiff's claim. We do not believe there was any likelihood that the jury misunderstood the remarks, and in any event, a finding that the trial was thereby rendered unfair was not compelled.

An examination of the charge, together with the requests which were denied, convinces us that no error was therein committed. All the requests which were proper were granted in substance, which is all that is required (*Paradis* v. *Greenberg*, 97 N. H. 173), and others were properly refused as inconsistent with the applicable law. *Derby* v. *Company*, 100 N. H. 53, and cases cited. No other exceptions of merit appearing, it follows the order is

*Judgment on the verdict.*

All concurred.